UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE SLANAKER,

    Plaintiff,

v.                                                                                  Case No. 07-11024
                                                                                  Hon. Sean F. Cox

ACCESSPOINT EMPLOYMENT
ALTERNATIVES, LLC and EMERY
ELECTRONICS, INC., d/b/a
CELLULAR & MORE,

    Defendants.
_____

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for summary judgment. Both parties have briefed the issues and a hearing was held January 24, 2008. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment. Summary judgment is granted on Plaintiff's claims for discrimination in violation of the ELCRA; retaliation in violation of the FMLA; and violation of the Michigan PWDA. Summary judgment is denied on Plaintiff's claim of interference in violation of the FMLA.

### I.    BACKGROUND

This action arises out of the termination of Plaintiff, Christine Slanaker. Plaintiff was hired in January 2003, by Defendant Emery Electronics as a Controller. After beginning her employment with Emery Electronics, Defendant AccessPoint contracted to be a co-employer. AccessPoint essentially handles administrative functions while Emery Electronics handles the

1

day-to-day business functions. As the Controller, among other things, Plaintiff's duties included managing day-to-day cash activities; reconciling store deposits; managing accounts receivable and payable; preparing financial reports; managing human resource functions; and managing payroll responsibilities. Plaintiff's boss was Rob Emery, the sole shareholder of Emery Electronics.

At the end of 2005, Plaintiff informed Emery that she was pregnant. When she was approximately seven months pregnant, Emery asked Plaintiff to put in writing her maternity leave plans. Plaintiff drafted a document entitled "Maternity Leave Request." In her request, Plaintiff detailed that she planned to work a minimum of 20 hours per week, and would like to take approximately 10 weeks off. She wanted to use her vacation time to make up the difference in hours to "reach a full 40 hour week load." In order to have enough vacation time for her proposal, she requested additional vacation time in lieu of a pay raise. Plaintiff also indicated a desire to work from home part of the time once her maternity leave was over. Plaintiff anticipated returning from her maternity leave on September 6, 2006. Emery accepted Plaintiff's proposal, with the condition that she come to the office once a week to pick-up and drop-off documents.

Plaintiff gave birth on June 10, 2006, and thus began her maternity leave approximately two weeks earlier than planned. Plaintiff picked up her office computer on June 14, 2006, and worked from home in accordance with her Maternity Leave Request. In the meantime, Emery made the decision to terminate Plaintiff's employment, along with several other employees. One of those employees was Amber Patterson, who had recently returned from maternity leave. Emery contacted AccessPoint to determine if he was able to terminate Plaintiff. AccessPoint

approved Plaintiff's termination.

On August 28, 2006, Emery sent Plaintiff an email requesting that she come to the office to discuss her position. At the meeting, Emery terminated Plaintiff's employment. He indicated that her position was being eliminated and that he planned to take over some of her duties. Emery also offered to provide her with a letter of recommendation. Plaintiff prepared her own termination documents, and indicated on her termination form that the reason was because her position was eliminated. Plaintiff also drafted a letter of recommendation that stated her position was eliminated. Approximately five months after Plaintiff's termination, Emery hired Beth Haddick as a bookkeeper. She worked 30-35 hours per week.

On February 1, 2007, Plaintiff filed a Complaint in the Wayne County Circuit Court alleging: (1) sex (pregnancy) discrimination in violation of the Elliott-Larsen Civil Rights Act, MCL § 37.2101 et seq. ("ELCRA"); (2) violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); and (3) violation of the Michigan Persons with Disabilities Act, MCL § 37.1101 et seq. Defendants removed the action to this Court on March 9, 2007. On October 24, 2007, Defendants filed the instant Motion for summary judgment on all claims. In her Response, Plaintiff agreed to dismiss her claim for violation of the Michigan Persons with Disabilities Act.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III. ANALYSIS

#### A. FMLA

Plaintiff claims that she was denied the right to return to her position following an FMLA leave and was terminated because she exercised her FMLA rights by taking a maternity leave. Defendant denies that Plaintiff exercised her FMLA rights, and further argues that she was terminated for economic reasons.

The FMLA provides up to twelve weeks of leave for qualifying employees who have a serious health condition. 29 U.S.C. § 2612(a)(1). Pregnancy is considered a "serious health condition" for purposes of the FMLA. 29 C.F.R. § 825.207. "Three kinds of leave are available to employees with a serious health condition: (1) one block of leave of twelve weeks or fewer; (2) intermittent leave * * *; and (3) reduced leave schedule, a plan under which the employer reduces the employee's normal work hours, usually to a part-time basis." *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005). "In order to receive leave, an employee is not required to invoke the FMLA expressly; however, she must give her employer notice of the request for leave, 'stating a qualifying reason for the needed leave.'" *Id.* (citation

4

omitted).  See *Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 488 (6th Cir. 2005)("The FMLA does not require an employee to mention the FMLA by name when notifying an employer of FMLA leave...[r]ather, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.").

     1.  **Interference with FMLA rights**

  Plaintiff argues that Defendants interfered with her FMLA rights by not restoring her to her position after her maternity leave.  To establish an FMLA interference claim, Plaintiff must establish: (1) she was an eligible employee; (2) Defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Defendant notice of her intention to take leave; and (5) Defendant denied her FMLA benefits to which she was entitled. *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

  Defendants do not dispute that Plaintiff was an eligible employee; that Defendants were employers; or that Plaintiff was entitled to FMLA leave.  Rather, Defendants argue that Plaintiff did not give notice of her intention to take FMLA leave.

  "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section."  29 C.F.R. § 825.208(a).  When Plaintiff informed Emery that she wanted to take time off following the birth of her child, it was Defendants responsibility to inform Plaintiff that the requested leave was FMLA qualifying.  It was not Plaintiff's obligation to inform Defendants that she was, or was not, specifically requesting FMLA leave.  See *Hoffman* and *Moorer, supra*. The fact that Plaintiff proposed to use her vacation time to make up the difference, so that she

would receive full pay, does not take the leave outside of the FMLA such that Defendants did not have an obligation to designate the leave as qualifying. See 29 C.F.R. § 825.207(b).

Defendants argue that this is a general rule that does not apply in this case because Plaintiff had sophisticated knowledge of the FMLA process. Defendants direct the court to the Fifth Circuit case *Greenwell v. State Farm Mutual Automobile Ins. Co.*, 486 F.3d 840 (5th Cir. 2007). In *Greenwell*, an employee took leave to tend to her sick child. When she called her supervisor she stated that he had fallen and was scared and bruised and she needed to take leave. The plaintiff's supervisor allegedly mentioned FMLA but did not request documentation. When the plaintiff returned to work she chose not to request FMLA protection for her absence because she did not have medical documentation. She was terminated based on her absence.

The Fifth Circuit addressed whether the plaintiff had provided sufficient FMLA notice to her employer that her leave was based on a serious medical condition. The court found that the plaintiff's communication with her supervisor did not sufficiently connect her absence "to a medical condition rising to the level of seriousness protected under FMLA thereby constituting sufficient FMLA-notice." *Id.* at 843. The plaintiff's son had asthma, which is an FMLA qualifying condition, but the plaintiff did not indicate to her supervisor that his asthma was the reason she needed leave. After the plaintiff returned from her leave, her supervisor told her to clear her absence through FMLA, presumably by providing medical documentation. The plaintiff refused to provide the documentation, arguing that the employer already had sufficient documentation of her son's asthma from two prior leaves she had taken under the FMLA. The court found her failure to give medical documentation further supported the employer's argument that she failed to give sufficient FMLA-notice. The court reasoned that she was aware

that FMLA procedures required her to submit documentation from the doctor. The court held that "[w]ithout sufficient notice specific to her son's condition...State Farm lacked the information to determine whether [plaintiff's] absence qualified for FMLA protection." *Id.* at 844.

*Greenwell* is inapplicable to the instant case. *Greenwell* dealt with whether the employee's notice was sufficient to inform the employer that she her leave was for a serious medical condition. The plaintiff failed to indicate her son's asthma was the reason for the absence, and also chose not to provide medical documentation of the same. Thus, the court found that the employer was not provided with sufficient notice to make a determination of whether the leave was FMLA qualifying. That is not the case here. There is no dispute that Plaintiff indicated her leave was a maternity leave, which is FMLA qualifying. The fact that Plaintiff knew Defendants' FMLA procedures did not alleviate their obligation, once given sufficient notice, to designate the leave as FMLA qualifying. It is the employer's obligation to designate whether leave is FMLA qualifying "in all circumstances" without regard to the level of the employee's knowledge of the FMLA procedures. See 29 C.F.R. § 825.208(a).

Defendant further argues that it is irrelevant whether they failed to designate leave as FMLA qualifying, because Plaintiff would have been terminated either way. An employee's right to reinstatement following FMLA leave is not absolute. "An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." *Moorer*, 398 F.3d at 488. "An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal

7

would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* "If the employer claims that the employee would have been discharged[,] the employee, in order to establish the entitlement protected by § 2614(a)(1), must, in the course of establishing the right, convince the trier of fact that the contrary evidence submitted by the employer is insufficient and that the employee would not have been discharged if he had not taken FMLA leave." *Arban v. West Publishing Corporation*, 345 F.3d 390, 401 (6th Cir. 2003)(citation omitted).

Defendants contend that Plaintiff would have been terminated regardless of her maternity leave, based on economic reasons. To support their claim, Defendants point out: (1) that a new sales group, referred to as the "B-to-B" group, had done poorly and lost money; (2) Defendant Emery Electronics began making weekly payments of $5000 to American Express to avoid collection; (3) the outside accountant advised Emery he needed to lower expenses; (4) Emery consulted with a bankruptcy attorney; (5) Emery removed himself from the company payroll; and (6) Defendant Emery Electronics began making structured settlement payments. Further, Defendants point out that several other employees' position's were eliminated.

Plaintiff does not deny that Defendants were experiencing cash flow problems, but argues that Emery Electronics was not as "financially distressed" as Defendants claim. According to Plaintiff, Emery Electronics had always experienced cash flow problems. Plaintiff testified that Emery frequently took himself off the payroll if there were cash flow problems, this was not a new occurrence. [Response, Exhibit 1, pp.98-99]. Plaintiff also testified that Emery Electronics had been put on payment plans in the past by creditors. [Response, Exhibit 1, pp.95-96]. Plaintiff further testified that Defendants were opening a new store. [Response, Exhibit 1, pp.171-173]. She believed Emery spent between $15,000 and $20,000 on an outside architect to

8

design a new floor plan. [Response, Exhibit 1, p.173]. Finally, Plaintiff believes that her job functions could not be eliminated, and that Emery could not perform her job functions because he did not have the same level of education. To support her argument, Plaintiff contends that Defendants hired Beth Haddock to "perform Plaintiff's essential job functions." [Response, p.15].

The facts presented are sufficient to establish a genuine issue of material fact regarding whether Plaintiff would have been terminated regardless of her leave. Defendants contend that regardless of her leave, Plaintiff would have been terminated for financial reasons. Defendants point to cash flow problems and the fact that other employees were also terminated. However, accepting Plaintiff's evidence as true, Emery Electronics routinely experienced cash flow problems. Despite the claim that Emery Electronics was in such dire straits that it needed to eliminate Plaintiff's position, it was in the process of opening a new location and expending money on its design. Defendants offer evidence to dispute Plaintiff's claim, but it is not the role of this Court on a motion for summary judgment to weigh the evidence. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim for interference under the FMLA.

### 2. Retaliation

Plaintiff also claims she was terminated in retaliation for exercising her FMLA rights. To establish an FMLA retaliation claim, Plaintiff must establish: (1) she was engaged in an activity protected by the FMLA; (2) Defendant knew she was exercising her rights under the FMLA; (3) after learning of the exercise of her FMLA rights, Defendant took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA

activity and the adverse employment action. *Killian*, 454 F.3d at 556 (citing *Arban*, 345 F.3d at 404).

There is no evidence that Defendants knew Plaintiff was exercising her rights under the FMLA when they decided to terminate her. Defendants did not provide Plaintiff notice that her maternity leave was FMLA qualifying. Plaintiff testified that she did not complete an FMLA request form and never mentioned to anyone that she was requesting FMLA leave. [Response, Exhibit 1, p.115]. Further, Plaintiff had handled FMLA request forms for Emery Electronics. Since she did not explicitly request FMLA leave, it was reasonable for Defendants to believe she was not intending to take FMLA leave. Further, the payroll records during Plaintiff's leave indicate that she was consistently paid her regular salary, with the use of vacation and sick pay. [Response, Exhibit 1, pp.121-123]. There is no reference to the FMLA.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for retaliation in violation of the FMLA.

### B. ELCRA - Sex (Pregnancy) Discrimination

Plaintiff also contends she was discriminated against based on her pregnancy. The ELCRA prohibits "sex" discrimination, and the term "sex" includes pregnancy. *Sniecinski v. Blue Cross and Blue Shield of Michigan*, 469 Mich. 124, 132 (2003). "Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Id.* The parties in this case present circumstantial evidence.

Cases relying on circumstantial evidence proceed using the familiar *McDonnell Douglas* burden shifting framework. *Id.* at 133-134 (citing *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973)). Under this approach the plaintiff may establish a rebuttable prima facie

case. If the plaintiff establishes a prima facie case, the defendant can rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason for the adverse employment action. *Id.* at 134. If the defendant articulates a nondiscriminatory reason, the presumption is rebutted and the burden shifts back to the plaintiff to establish that the defendant's reason is a pretext for discrimination. *Id.* "[A] plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." *Id.* at 134-135.

In order to establish a prima facie case of discrimination, the plaintiff must present evidence that: (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Sniecinski*, 469 Mich. at 134. Alternatively, a plaintiff can establish the fourth element by proving "others, similarly situated and outside the protected class," were treated differently. *Town v. Michigan Bell Telephone Company*, 455 Mich. 688, 695 (1997). Defendants do not contest the first three elements. Rather, Defendants argue that Plaintiff cannot show any discriminatory predisposition, or that others similarly situated were treated differently.

Plaintiff claims that Defendants' predisposition to discriminate against pregnant women can be shown by "comments [Emery] made regarding Ms. Patterson during her pregnancy and after giving birth." [Response, p.16]. Patterson was Plaintiff's assistant who was also terminated with Plaintiff. She had also previously taken a maternity leave. This is the only evidence Plaintiff directs the Court to in order to support her discrimination claim.

Plaintiff's deposition testimony does not support her contention.

> Q. Amber Patterson had a leave of absence following her pregnancy, right?
> A. Correct.

11

> Q. **Are you aware of any negative comments relating to Amber's pregnancy from Rob or anyone else at Emery Electronics or anyone at Accesspoint?**
> A. **No.**

[Response, Exhibit 1, p.159](emphasis added). The specific testimony Plaintiff relies on to support her claim is similarly unavailing:

> Q. What I'm saying is you said Rob wanted Amber gone, but those comments, to the extent they were even made, were made back in early 2005 or late 2004?
> A. Oh, no. He made those the whole time.
> Q. The whole time. So it had nothing to do with the fact that she was pregnant and/or had been on a leave of absence, right?
> A. The last four or five months it had to do with the fact that she was pregnant -
> Q. Why is that?
> A. - and the baby.
> Q. Why is that?
> A. Because she wasn't producing.
> Q. Well, what conversations did you have with Rob about Amber not producing?
> A. The conversations I had with Rob was he was going to hire an administrative assistant, and I was going to - the administrative assistant would work directly under me, and at that time then we would probably let Amber go altogether.
> \* \* \*
> Q. And Rob never made any comments to you during that period of time that, "I want to get rid of Amber while she is on leave."?
> A. No.
> Q. **At no time during your employment at all did Rob Emery or anyone else at Emery Electronics make any derogatory comments about your pregnancy or anyone else's pregnancy, right?**
> A. **No.**

[Response, Exhibit 1, pp.162-164](emphasis added).

The evidence cited by Plaintiff does not give rise to an inference that Defendants had a predisposition to discriminate against pregnant women. The vague and stray remark about Patterson not producing is insufficient to support Plaintiff's claim, particularly in light of her

12

testimony that she never heard a derogatory comment regarding pregnancy by Defendants. Plaintiff does not offer any other evidence to support her claim. Because Plaintiff fails to direct the Court to any evidence that she was terminated based on her pregnancy, Defendants are entitled to summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment. Summary judgment is granted on Plaintiff's claims for discrimination in violation of the ELCRA; retaliation in violation of the FMLA; and violation of the Michigan PWDA. Summary judgment is denied on Plaintiff's claim of interference in violation of the FMLA.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated: February 13, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on February 13, 2008, by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**
**Case Manager**