UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE SLANAKER,

    Plaintiff,

v.                                                                                                               Case No. 07-11024
                                                                                                       Hon. Sean F. Cox

ACCESSPOINT EMPLOYMENT
ALTERNATIVES, LLC and EMERY
ELECTRONICS, INC., d/b/a
CELLULAR & MORE,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION
FOR RECONSIDERATION**

This matter is before the Court on Defendants' Motion for Reconsideration of this Court's Order granting in part, and denying in part, Defendants' motion for summary judgment. Defendants assert the Court erred by finding Plaintiff was entitled to reduced schedule leave; and by finding a genuine issue of material fact regarding whether Plaintiff's position would have been eliminated regardless of her leave. For the following reasons, the Court **DENIES** Defendants' Motion for Reconsideration.

**I. BACKGROUND**

This action arises out of the termination of Plaintiff, Christine Slanaker. The underlying facts are sufficiently set forth in this Court's Order granting in part, and denying in part, Defendants' motion for summary judgment, entered February 13, 2008. [Doc. 22]. Following entry of that order, the only remaining claim in this case is Plaintiff's claim for interference

1

claim in violation of the Family and Medical Leave Act ("FMLA").

On February 27, 2008, Defendants filed the instant Motion for Reconsideration. Defendants argue that the Court erred first by finding that Plaintiff was entitled to reduced schedule leave. Second, Defendants argue the Court erred when it found there is an issue of fact regarding whether Plaintiff's position would have been eliminated regardless of her leave because of financial difficulties. As directed by the Court, Plaintiff filed a Response on March 7, 2008.

## II. STANDARD OF REVIEW

Motions for reconsideration are treated as motions to alter or amend judgment pursuant to Fed.R.Civ.P. 59. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). Under Rule 59, motions may be granted if there is a clear error of law; newly discovered evidence not previously available; an intervening change in controlling law; or to prevent manifest injustice. *Gencorp, Inc. v. American International Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Additionally, local rule provides:

> (g) Motions for Rehearing or Reconsideration.
>
> * * *
>
> (3) Grounds. Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(g).

## III. ANALYSIS

### A. Did the Court Err By Finding That Plaintiff Was Entitled to Reduced Schedule Leave Under the FMLA?

Both parties misunderstand the Court's ruling. The Court did not find that Plaintiff was entitled to a reduced schedule leave. This Court held:

> 'In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section.' 29 C.F.R. § 825.208(a). When Plaintiff informed Emery that she wanted to take time off following the birth of her child, it was Defendants [sic] responsibility to inform Plaintiff that the requested leave was FMLA qualifying.

[Doc. 22, p.5]. Simply put, Defendants did not comply with FMLA because they did not inform Plaintiff that maternity leave is FMLA qualifying. That is not to say that when Plaintiff later presented Defendants with a proposal for a reduced leave schedule, they were required to agree to it.[1] Defendants were only required, when Plaintiff gave them notice that she wanted to take time off following the birth of her child, to inform Plaintiff that her leave was FMLA qualifying.

Defendants argue in their Motion that "Plaintiff did not take leave because of her pregnancy, or any other serious health condition...[r]ather, Plaintiff took maternity leave to care for her newborn child." [Motion, p.2]. Defendants argue that leave to care for a newborn child is not covered by the FMLA. That is patently incorrect. With respect to the FMLA, Congress found that "it is important for the development of children and the family unit that fathers and mother be able to participate in early childrearing." 29 U.S.C. § 2601(a)(2). One purpose of the FMLA was to entitle employees, both male and female, to take reasonable leave "for the birth or

---

[1] As Defendants point out, an employee is not entitled to a reduced leave schedule, the employer must agree to it. 29 C.F.R. § 825.203(b). However, this is a separate issue from whether Defendants had an obligation to inform Plaintiff that maternity leave is covered by the FMLA.

3

adoption of a child." 29 U.S.C. § 2601(b)(2). Further, employers covered by FMLA are required to grant leave to eligible employees "[f]or the birth of a son or daughter, and **to care for the newborn child**." 29 C.F.R. § 825.112(a)(1)(emphasis added). Maternity leave is covered under the FMLA.

In *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005), the Sixth Circuit affirmed that an employee can bring an interference claim for failure to provide notice required under the FMLA with respect to a maternity leave. In *Saroli*, the plaintiff was employed as the defendant company's controller. The defendant company did not have a maternity leave policy. When the plaintiff became pregnant she attempted to discuss the terms of her maternity leave. The defendants initially did not respond to her requests. The plaintiff prepared a written request for maternity leave seeking four weeks off immediately following the birth of her child, with the exception of doing payroll every other week, and asked to work from home on a reduced schedule for several weeks thereafter. The plaintiff also indicated that she planned to return to work full-time. The defendant offered the plaintiff six weeks of paid leave, and allowed her to extend the leave with any vacation or personal time she had remaining. The plaintiff accepted. During the plaintiff's absence, another employee was hired to perform some of her job functions. Upon the plaintiff's return, she was forced to either accept a demotion or resign. She chose to resign.

The plaintiff brought several actions, including a claim for interference under the FMLA. The plaintiff alleged interference based on the defendant's failure to provide her with written notice of her eligibility under the FMLA; for insisting that she produce a medical certification to return to work; and for failing to notify her that she was eligible to take 12 weeks of leave under

4

the FMLA. The court found that the plaintiff's allegations were actionable in an FMLA interference claim. *Saroli*, 405 F.3d at 454. The court held "[t]he facts show that defendants did not so inform her; instead, they offered Saroli six weeks of leave. Such interference is sufficient to create the necessary inference that defendants discouraged Saroli from exercising her rights." *Id.* The *Saroli* court reversed the district court's grant of summary judgment on the plaintiff's interference claim and remanded to the district court for a determination of damages.

In this case, Defendants concede that Plaintiff told Emery around April or May 2006, that she needed maternity leave. [Doc. 12, p.5]. In order to provide sufficient notice under the FMLA, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example." 29 C.F.R. § 825.302(c). When Plaintiff told Emery she needed maternity leave, it became Defendants obligation to inform her that the leave was FMLA qualifying. Rather than informing Plaintiff that her maternity leave was FMLA qualifying as required, Defendants told Plaintiff to put her maternity leave request in writing, without informing her that she was entitled to FMLA leave. *Id.* Plaintiff submitted a written maternity leave request, to which Defendants agreed. However, there is no evidence that Defendants were agreeing to a reduced leave schedule under the FMLA.

It is undisputed that at no time did Defendants verbally or in writing advise Plaintiff that her maternity leave was FMLA qualifying. Although Defendants argue, and this Court does not disagree, that it was reasonable for Defendants to believe Plaintiff did not intend to exercise her FMLA rights, "[t]he employer's intent is not a relevant part" of the interference analysis. *Edgar v. JAC Products, Inc*., 443 F.3d 501, 507 (6th Cir. 2006). Defendants' FMLA notice obligations

5

are not dependent on whether they believe the employee will exercise FMLA rights, or whether they believe the employee should have used internal notice procedures. Accordingly, the Court did not err in finding that Plaintiff established a claim for interference under the FMLA.

> **B. Did the Court Err in Finding a Genuine Issue of Material Fact Regarding Whether Plaintiff's Position Would Have Been Eliminated Regardless of her Leave?**

The FMLA is not a strict liability statute, "[e]mployees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." *Edgar,* 443 F.3d at 507-508. The remaining issue in this case is essentially one of damages, regarding whether Plaintiff would have been terminated regardless of her leave. Plaintiff had the obligation to present evidence sufficient to create a genuine issue of material fact regarding whether she would have been terminated. Defendants claim Plaintiff was terminated because of Emery Electronics financial condition.

Plaintiff presented evidence that despite Defendants' claims of Emery Electronic's urgent financial distress, the company had always experienced financial difficulties. In its Order, the Court noted:

> Plaintiff testified that Emery frequently took himself off the payroll if there were cash flow problems, this was not a new occurrence. [Response, Exhibit 1, pp.98-99]. Plaintiff also testified that Emery Electronics had been put on payment plans in the past by creditors. [Response, Exhibit 1, pp.95-96]. Plaintiff further testified that Defendants were opening a new store. [Response, Exhibit 1, pp.171-173]. She believed Emery spent between $15,000 and $20,000 on an outside architect to design a new floor plan. [Response, Exhibit 1, p.173]. Finally, Plaintiff believes that her job functions could not be eliminated, and that Emery could not perform her job functions because he did not have the same level of education. To support her argument, Plaintiff contends that Defendants hired Beth Haddock to "perform Plaintiff's essential job functions." [Response, p.15].

[Doc. 22, pp.8-9].

6

In Defendants' Motion, they argue that Plaintiff admitted in her deposition that Emery Electronics had never agreed to make $5,000 weekly payments to American Express. [Motion, p.9]. From that, Defendants conclude that Plaintiff cannot dispute "the unprecedented severity of the cash flow problem that Emery Electronics was experiencing at the time it decided to eliminate Plaintiff's position." *Id.* In actuality, Plaintiff testified that Emery Electronics had never arranged to pay "specifically $5,000 a week." Plaintiff does not testify that Emery Electronics has never had to pay anything near $5,000, or that the cash flow problem as a result was severe. Additionally, during Plaintiff's deposition, counsel recounted many of the financial circumstances it relies on to support its motion and asked Plaintiff "[s]o there were factors, from an economic standpoint, that were going on at the time that you were separated that were unlike any other thing that happened in the past?" [Motion, Exhibit 1, pp.205-206]. Plaintiff replied, "[o]n my experience with the company, we always had ongoing issues very similar to the ones you have just mentioned." *Id.* at p.206. Plaintiff, who was employed as Emery Electronic's Controller, did not believe the cash flow problems Emery Electronics was experiencing were any more severe than usual.

Plaintiff presents sufficient evidence to create a question of fact. As noted in the order denying summary judgment on this issue, while Defendants may have probative evidence to the contrary, it is for the jury to decide. The Court did not err in finding that Plaintiff created an issue of fact.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration of this Court's Order granting in part, and denying in part, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

                                       **S/Sean F. Cox**
                                       **Sean F. Cox**
                                       **United States District Judge**

**Dated: March 12, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on March 12, 2008, by electronic and/or ordinary mail.**

                                       **S/Jennifer Hernandez**
                                       **Case Manager**